IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHARLES WHITNEY**, | ) CIVIL ACTION NO.  19-1237 |
| Plaintiff, | ) <br> ) JUDGE JOY FLOWERS CONTI |
| v. | ) |
| **LT. POSIKA, LT. PARKER, C/O BOSEGERNO, LT. BURTON, CPT. HAWKINBURRY, CO1 JOHN DOE, UNIT MANAGER KNEEPER, SUP. MARK CAPOZZA, JOHN DOE 2, C/O 1 ROBBERTS and C/O ERRET,** | ) |
| Defendants. | |

## MEMORANDUM OPINION

I. Introduction

Pending before the court is the magistrate judge's report and recommendation ("R&R") (ECF No. 82), which recommended that a motion for summary judgment (ECF No. 66) filed on behalf of the Corrections Defendants[1] be denied. The Corrections Defendants filed timely objections to the R&R (ECF No. 85). Plaintiff Charles Whitney ("Whitney") filed a response (ECF No. 86) and the objections to the R&R are ripe for decision.

II. Factual and Procedural History

Whitney is a pro se state prisoner. The factual record is construed in the light most favorable to Whitney, the nonmovant. Allegations set forth in Whitney's verified amended complaint (ECF No. 12) are considered part of the summary judgment record, to the extent those

---

[1] The remaining "Corrections Defendants" are Posika, Parker, Bosegerno, Burton, Hawkinburry, Kneeper, Robberts and Erret. The court notes that the spelling of the Corrections Defendants' names is different in the underlying documents (e.g., Poska, Boscarino, Hawkinberry, Knepper, Roberts). The court will follow the spelling used by defense counsel. Superintendent Capozza was previously dismissed (ECF Nos. 39, 40). The "John Doe" defendants were never identified. The magistrate judge recommends that the John Doe defendants be dismissed (ECF No. 82 at 2 n.1). Whitney did not object to this recommendation and it will be adopted by the court.

allegations are within Whitney's personal knowledge. *Jackson v. Armel*, No. CV 17-1237, 2020 WL 2104748, at *5 (W.D. Pa. May 1, 2020) (citing *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary judgment motion). The Corrections Defendants filed a memorandum of law, a concise statement of material facts ("CSMF"), and an appendix in support of the summary judgment motion (ECF Nos. 67-69). Whitney filed a brief and a response to the CSMF, including a declaration (ECF Nos. 71, 72). The Corrections Defendants filed a reply brief.

After the court's ruling on defendants' motion to dismiss (ECF Nos. 39, 40), Whitney's only remaining claims are for First Amendment Retaliation and excessive force and denial of medical care under the Eighth Amendment. The Corrections Defendants seek summary judgment for all defendants on all remaining claims. The court will summarize the applicable factual background, although Whitney's allegations are at times difficult to decipher.

A. Theft from cell and Whitney's grievances

In February 2019, while Whitney was incarcerated at SCI-Fayette, he alleges that Erret stole and damaged items in his cell. Amended Complaint ¶ 30. Whitney filed Grievance #785439 about this incident. Defendants' Exh. B (ECF No. 69-1).

Kneeper pressured Whitney to "sign off" (i.e., withdraw) the grievance; when Whitney refused, Kneeper filed a false response denying the grievance. Amended Complaint ¶¶ 31-32; CSMF Response ¶ 5. Whitney filed an appeal to the superintendent, but did not receive a response as of April 10, 2019. Amended Complaint ¶ 33.

On March 26, 2019, Whitney was placed in Disciplinary Custody for 30 days, for an unrelated violation. Defendants' Exh. D. During this time, he could only access his legal papers by making a request once per month. Defendants' Exh. Q.

On April 9, 2019, unnamed officers took papers from Whitney's cell to prevent him from pursuing his appeal against Erret.[2]  Amended Complaint ¶ 34.  On April 10, 2019, Whitney filed Grievance #797180, conclusorily alleging that Burton and Hawkinburry imposed library restrictions and "authorized" unnamed officers to steal his eyeglasses, false tooth and legal books and documents to interfere with his ongoing legal cases.  Defendants' Exh. F.  There are no supporting averments about what Burton or Hawkinsburry[3] did.

Whitney asserts that he did not receive his property or legal documents back as of April 25, 2019.  CSMF Response ¶ 17.  On April 30, 2019, Whitney filed Grievance #799484, conclusorily accusing Burton, Hawkinburry, Captain Tift and an unnamed officer of conspiring to withhold his legal papers to deny his access to the courts.  Defendants' Exh. Q.  There is no evidence of any actual conduct by defendants Burton or Hawkinburry.

When Whitney received his papers on May 24, 2019, the documents relating to Grievance #785439 were missing.  Defendants' Exh. C. Whitney filed Grievance #801308 (which he subsequently withdrew), alleging that he was being prevented from pursuing his appeal against Erret.  Defendants' Exh. C.

There is no evidence that Bosegerno, Parker or Posika knew about Whitney's prior grievances.  There is no evidence that Parker or Posika participated in the taking of Whitney's papers or attempted to prevent Whitney from pursuing his grievance appeal.

B.  April 9, 2019 Excessive Force Incident

---

[2] It appears this incident was separate from the alleged excessive use of force (discussed below) that occurred the same day.  *Compare* Grievance ## 797180 and 795877.

[3] There is only one mention of Hawkinburry in the amended complaint and it is based on hearsay.  In ¶ 58, Whitney states: "When plaintiff filed grievance in complaint his restriction was extended as a retaliatory act from one week to the next week this Sgt. Wine inform the plaintiff that Cpt. Hawkinberry [sic] placed the plaintiff on the same restriction which took the plaintiff pass one week."  (ECF No. 12). Because the allegation about Hawkinburry's conduct came from Sgt. Wine and is not within Whitney's own knowledge, it will not be included in the summary judgment record.

On April 9, 2019, Bosegerno performed a search of Whitney's cell and confiscated a box with books in it. When Whitney objected and requested a confiscation slip, Bosegerno told him to shut up and face forward. Amended Complaint ¶ 35. Bosegerno, Parker and Posika escorted Whitney down the stairs and made various threats. Amended Complaint ¶¶ 45-47. Whitney alleges he was sexually assaulted by Parker, who grabbed his buttocks,[4] and verbally and physically abused by Bosegerno and Posika. Amended Complaint ¶¶ 43, 49. In the RHU area, they banged his head off the wall 5 or 6 times and popped his arm out of place. Amended Complaint ¶¶ 49-50. They also forced him to his knees and used homosexual slurs. Amended Complaint ¶ 52.

Whitney alleges that Burton was in the lieutenant's office and could see all that Bosegerno, Parker and Posika did to him, but did nothing to intervene. Amended Complaint ¶ 51. Whitney alleges that Burton watched the attack through the window and was deliberately indifferent to the assault. Amended Complaint ¶ 51.[5] Whitney filed Grievance #795877 about this incident. Defendants Exh. O. Due to the nature of the allegations, the incident was investigated through the Prison Rape Elimination Act ("PREA") procedures. Defendants Exh. P.

The officers filed a misconduct report against Whitney over the April 9, 2019 incident. Defendants Exh. E. A hearing officer found Whitney guilty of being verbally abusive and assaultive toward staff (including kicking Posika) and placed him on restrictions. The restrictions were lifted on April 26, 2019. Id.

C. Alleged denial of medical care

---

[4] Whitney initially did not identify Parker; instead, he accused an unidentified corrections officer of grabbing his buttocks. Grievance #795877, Defendants Exh. O; April 12, 2019 Interview, Defendants Exh. N.
[5] The Corrections Defendants point out that Whitney did not identify Burton as a witness in the original grievances or investigation. CSMF ¶¶ 29-31.

4

Whitney alleges that unidentified "defendants" stole and refused to give back his eyeglasses and false tooth. Amended Complaint ¶ 59; Responsive CSMF ¶¶ 6, 33, 36, 37. On April 10, 2019, Whitney filed Grievance #795877, alleging that five unnamed corrections officers stole his gold framed eyeglasses and his false tooth on April 9, 2019. Defendants Exh. F. In the grievance, Whitney alleged that Hawkinburry and Burton "authorize[d] the CO 1 officers to steal and destroy my medical eyeglasses." Defendants Exh. F. In his affidavit, Whitney conclusorily alleges that Burton and Hawkinburry placed him in isolation, held all his property (including his eyeglasses) and filed a form based on a false misconduct report. Declaration ¶¶ 13-14. There are no supporting allegations about either defendant's conduct. Whitney alleges he was told in June and July 2021 that his eyesight deteriorated. CSMF Response ¶ 33, 34.

D. Use of OC Spray

On three occasions in August 2019, Whitney alleges that Posika used excessive amounts of OC spray on an inmate housed directly below Whitney. Posika used so much OC spray that rivulets were running out of the cell. Posika directed officers to open cell vents so that OC spray would be pulled into Whitney's cell. Amended Complaint ¶¶ 64-67. Whitney suffered choking, coughing, sneezing and burning eyes. Whitney filed Grievance #819656 about these incidents. Defendants Exh. R.

E. Sending property to SCI-Forest

The only allegations against Robberts relate to Whitney's transfer from SCI-Fayette to SCI-Forest. On September 29, 2019, Robberts allegedly forced Whitney to sign a blank postage slip (or his property would be destroyed) and charged $82.80 to ship his personal property. Amended Complaint ¶¶ 25-29; Defendants Exh. I, L. There is no allegation that Robberts knew about Whitney's grievances or that Robberts' conduct was related in any way to Whitney's protected activity.

III.   Standards of Review

A.   Review of magistrate judge R&Rs

Pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made" and "may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C).  Rule 72(b)(3) requires de novo review of any recommendation that is dispositive of a claim or defense of a party to which proper objections were made. *See Fraunhofer-Gesellschaft Zur Forderung Der Angewandten Forschung E.V. v. Sirius XM Radio Inc.*, No. 1:17CV184, 2021 WL 1147010, at *1 (D. Del. Mar. 25, 2021).

A party's failure to timely object to a magistrate judge's conclusions "may result in forfeiture of de novo review at the district court level." *Nara v. Frank*, 488 F.3d 187, 194 (3d Cir. 2007) (citing *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987)).  A district court must take some action for an R&R to become a final order and the responsibility to make an informed, final determination remains with the district court judge. *E.E.O.C. v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017).  As a matter of good practice, therefore, a district court should afford "reasoned consideration" to the uncontested portions of the report in order to "satisfy itself that there is no clear error on the face of the record." *Id.*; Fed. R. Civ. P. 72(b) advisory committee notes.

The court will review the recommendation to deny the summary judgment motion de novo.  The court reviewed the recommendation to dismiss the John Doe defendants, to which no party objected, for clear error, and will adopt that recommendation.

B. Summary judgment

The court summarized the applicable summary judgment standard in *Washington v. Delisma*, No. 3:19-CV-00196, 2022 WL 1462291 (W.D. Pa. Mar. 31, 2022), as follows:

> Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
>
> The moving party bears the initial burden of identifying evidence, or the lack thereof, which demonstrates the absence of a genuine issue of material fact. *Nat'l State Bank v. Fed.l Reserve Bank of New York*, 979 F.2d 1579, 1581-82 (3d Cir. 1992) (citing *Celotex*, 477 U.S. at 323-25, 106 S.Ct. 2548). Once that burden has been met, the nonmoving party may not rest on the allegations in the complaint, but must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed. R. Civ. P. 56(e) (1963)). *See also Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995) ("Plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case.") (citing *Celotex*, supra).
>
> An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In *Anderson*, the United States Supreme Court noted the following:
>
> > [A]t the summary judgment stage the judge's function is not [her]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.... [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.
>
> *Id.* at 249-50 (internal citations omitted).

*Washington*, 2022 WL 1462291, at *7. As explained above, the allegations in Whitney's verified complaint that are within his personal knowledge will be regarded as akin to an affidavit and included in the summary judgment record. *Jackson*, 2020 WL 2104748 at *5.

IV. <u>Analysis</u>

7

A. Legal Overview

1. Section 1983

Section 1983 affords a means to redress violations of federal law committed by state actors. In pertinent part, § 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. ...

42 U.S.C. § 1983. As explained in *Washington*:

> Section 1983 is not a source of substantive rights, but merely a method for vindicating violations of federal law. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a Section 1983 claim, a plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States ... by a person acting under color of state law." *Id.* (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)).

*Washington*, 2022 WL 1462291 at *8. There is no dispute that the Corrections Defendants were acting under color of state law at all times relevant to this litigation.

Whitney named numerous defendants. Vague, conclusory allegations that "the defendants" violated his rights are not actionable. Whitney must demonstrate that there is evidence from which a reasonable jury could find that each named defendant violated his constitutional rights. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (civil rights plaintiff must state the conduct, time, place, and persons responsible for the alleged civil rights violations). As explained in *Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. 1988):

> [A] defendant in a civil rights action must have personal involvement in alleged wrongs ... Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

8

*Id.* at 1207. In *Vo v. Wetzel*, No. 1:19-CV-00084-RAL, 2021 WL 6197743, at *8 (W.D. Pa. Dec. 31, 2021), aff'd, No. 22-1210, 2022 WL 1467978 (3d Cir. May 10, 2022), the court described the necessity for Whitney to demonstrate each defendant's individual role as follows:

> A defendant in a § 1983 action "must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Saisi v. Murray*, 822 Fed. Appx. 47, 48 (3d Cir. 2020) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007)). It is the plaintiff's burden to "show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. Sept. 14, 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)). Allegations that broadly implicate multiple defendants without delineating individual conduct are legally insufficient. *See Van Tassel v. Piccione*, 608 Fed. Appx. 66, 69-70 (3d Cir. 2015).

*Id.* at *8.

It is also well established that a supervisor is not automatically liable for the actions of subordinates. In *Weimer v. County of Fayette, Pennsylvania*, No. CV 17-1265, 2022 WL 2819025 (W.D. Pa. July 19, 2022), the court recently summarized the applicable standard:

> To establish a supervisory liability against any individual Defendant, [a plaintiff] must:
>
> > (1) identify the specific supervisory practice or procedure that the supervisor failed to employ and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.
>
> *Min v. Morris*, 737 F. Supp. 2d 332, 339 (E.D. Pa. 2010) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). Additionally, " 'it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did.' Rather, the plaintiff must identify specific acts or omissions of the supervisor that evidence deliberate indifference and persuade the court that there is a 'relationship between the 'identified deficiency' and the 'ultimate injury.' " *Brown*, 269 F.3d at 216 (quoting *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) (cleaned up)).

*Id.* at *21.

        2. First Amendment Retaliation Claims

To state a First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  A prisoner's filing of a grievance constitutes constitutionally protected conduct. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).

The Corrections Defendants argue that Whitney failed to produce evidence from which a jury could find that his protected activity was a substantial or motivating factor for the alleged adverse actions.  As explained in *Brown v. Waxford*, No. 3:19-CV-00839, 2022 WL 2759064 (M.D. Pa. July 14, 2022), the requisite causal connection may be shown in several ways:

> There are a variety of ways to prove causation for a First Amendment retaliation claim. One method is to show "unusually suggestive" timing between the protected conduct and the adverse action. When a plaintiff relies solely on circumstantial evidence of temporal proximity at summary judgment, the time between the protected conduct and the adverse action is often measured in days rather than weeks or months. However, there is no "bright line rule limiting the length of time that may pass between a plaintiff's protected speech and an actionable retaliatory act by a defendant." Another approach is to demonstrate "a pattern of antagonism coupled with timing." Finally, causation can be inferred "from the evidence gleaned from the record as a whole."

*Id.* at *9 (citations omitted).

3. Eighth Amendment Claims

Whitney alleges two different kinds of Eighth Amendment violations.  First, he alleges the wanton infliction of pain (i.e., the April 9 incident and the OC spray).  Second, he alleges deliberate indifference to his medical needs from the denial of his eyeglasses.

   a. Excessive force

In an excessive force claim, the core question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

*Hudson v. McMillian*, 503 U.S. 1, 7 (1992). In evaluating a claim of excessive use of force, the court must take several factors into consideration, such as:

> (1) 'the need for the application of force;' (2) 'the relationship between the need and the amount of force that was used;' (3) 'the extent of injury inflicted;' (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them;' and (5) 'any efforts made to temper the severity of a forceful response.'

*Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000).

b. Medical needs

Under the Eighth Amendment, prison officials are prohibited from exhibiting deliberate indifference to serious medical needs of inmates. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To set forth a cognizable claim for deliberate indifference to a serious medical need, a plaintiff must allege (1) a serious medical need and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Id.* at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Under some circumstances, the denial of eyeglasses by prison officials may constitute an Eighth Amendment violation. *Porter v. Hogue*, No. CIV.A. 12-101, 2015 WL 1245784, at *5 (W.D. Pa. Mar. 18, 2015).

B. Application

The Corrections Defendants contend they are entitled to summary judgment on all claims because: (1) Whitney failed to exhaust his administrative remedies with respect to Grievance ## 784539 and 801308; (2) Whitney's protected conduct (filing grievances and lawsuits) was not a substantial and motivating factor for the Corrections Defendants' conduct; (3) the evidence reflects that Whitney was not subjected to excessive force or sexual assault during the April 9, 2019 incident; (4) there is no evidence that Burton was present during the April 9, 2019 incident; (5) there is no evidence that defendants intentionally exposed Whitney to OC spray in August

11

2019; and (6) there is no evidence Whitney sought or was denied medical care for his eyesight or tooth. The magistrate judge recommended that defendants' motion be denied because there are material disputes of fact. The court agrees in part with the magistrate judge's recommendations on the arguments asserted by the Corrections Defendants, but must further analyze the evidence to determine what claims (if any) remain for trial against each named defendant.

    1. Exhaustion

It is undisputed that Whitney never completed the third stage of the administrative process for Grievance #785439, by appealing the superintendent's April 9, 2019 decision to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). As the magistrate judge pointed out, however, there are factual disputes about whether the final step of the administrative grievance procedure was available to Whitney. The Corrections Defendants argue, based on Grievance #801308, that Whitney admitted that the relevant documents were not stolen until May 4, 2019 – after the applicable 15-working day appeal period expired. In Whitney's response to the CSMF, he contends that the relevant papers were withheld beginning on April 9, 2019, which prevented him from filing the appeal with SOIGA. CSMF Response ¶ 6. Whitney was in disciplinary custody for 30 days in March and April 2019 (Defendants Exh. D) and he alleges he received the relevant legal papers back on May 24, 2019 (Defendants Exh. C). The record must be construed in the light most favorable to Whitney. A reasonable jury could conclude that he was unable to access the administrative process. The Corrections Defendants are not entitled to summary judgment based on a failure to exhaust administrative remedies. The court will consider Whitney's claims on the merits. The court adopts this aspect of R&R #82.

    2. First Amendment retaliation

As an initial matter, the Corrections Defendants argue that the documentary evidence they submitted "completely contradicts the actions as alleged by Plaintiff." (ECF No. 85 at 3). That may be so – the evidence presented by the Corrections Defendants certainly presents a far different factual scenario. The court, however, is not authorized to make credibility findings, weigh the evidence or resolve fact disputes at the summary judgment stage. In addition, the court must view the record in the light most favorable to Whitney.

The Corrections Defendants argue that Whitney failed to produce evidence from which a jury could find that his protected activity was a substantial or motivating factor for the alleged adverse actions. The magistrate judge recognized that this is not a simple case in which Whitney can rely on temporal proximity, but concluded that the record as a whole could support an inference of causation. R&R #82 at 14.

The court agrees with the magistrate judge that Whitney engaged in protected activity by filing numerous grievances. R&R #82 at 11. The court also agrees with the magistrate judge that the record reflects a series of disciplinary actions and use of force incidents that could support the adverse action prong. R&R #82 at 11. The court concludes, however, that Whitney failed to establish the requisite causal connection between his protected activity and an adverse action with respect to any of the individually-named defendants.[6]

The alleged theft in February 2019 does not support a retaliation claim against Erret. There is no evidence from which a reasonable jury could find that Erret knew that Whitney filed

---

[6] The R&R appears to have evaluated Whitney's allegations against the Corrections Defendants as a group and did not address the conduct of any individual defendant except Posika. (ECF No. 82 at 12-14). The magistrate judge stated: "Whitney is systematic in his allegations linking the Corrections Defendants' adverse actions to his involvement in protected activity. *See, e.g.*, Paragraphs 40, 41, 42, and 48 of the Amended Complaint." (ECF No. 82 at 13). Those paragraphs, however, refer generally to "defendants" and do not identify conduct by any particular individual.

previous grievances or engaged in other protected activity, let alone that Erret committed the alleged theft in retaliation for that protected activity.[7]

A claim against Kneeper for allegedly pressuring Whitney to withdraw his grievance is not cognizable under § 1983.  In *Harris*, the court explained:

> [T]he law does not recognize a stand-alone due process claim regarding access to the prison grievance program. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *see also Anderson v. Pennsylvania*, 196 F. App'x 115, 117 (3d Cir. 2006) ("Anderson does not have a liberty interest protected by the due process clause in the inmate grievance procedures.") (citing *Antonelli*, 81 F.3d at 1430); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) ("Inmates do not have a constitutionally protected right to the prison grievance process.") (citing *Flick*, 932 F.2d at 729).

*Harris,* 822 F. App'x at 130;  *See Shrum v. Stempien*, No. 3:20-CV-444, 2021 WL 912520, at *8 (M.D. Pa. Mar. 9, 2021) (allegation that inmate was threatened to withdraw grievances is insufficient to state a constitutional claim because inmates do not have a constitutionally protected right to prison grievance procedures); *Green v. Wetzel*, No. CV 18-93, 2019 WL 1426955, at *7 (W.D. Pa. Mar. 29, 2019) (dismissing claim that prison official pressured D to withdraw grievance) ("any allegations of improprieties in the handling of [a] grievance do not state a cognizable claim under § 1983.").

The gravamen of Whitney's theory is that the prison staff (for unstated reasons) wanted to prevent him from appealing his grievance about Erret's alleged theft in February 2019 to SOIGA.  Whitney alleges that many of the alleged retaliatory actions were committed by unknown or John Doe officers and Whitney makes vague references to multiple defendants.  Whitney failed to specifically state the time, place and conduct by which a jury could find that

---

[7] As explained previously, a state prisoner has no claim under §1983 for an unauthorized deprivation of property, either intentional or negligent, by a state employee if a meaningful state post-deprivation remedy for the loss is available.  (ECF Nos. 39, 40); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  In *Harris v. Wetzel*, 822 F. App'x 128, 130 (3d Cir. 2020), the Third Circuit Court of Appeals rejected a similar claim base on an alleged theft from an inmate's cell and reiterated that Pennsylvania law provides an inmate with an adequate post-deprivation remedy, thereby satisfying due process.

any named defendant was personally responsible for the retaliatory acts. *See Evancho*, 423 F.3d at 353.

Whitney's conclusory contentions that Burton and Hawkinburry "authorized" unnamed corrections officers to take his glasses and papers are not sufficient at the summary judgment stage to establish supervisory liability. *Weimer*, 2022 WL 2819025 at *21. Similarly, the broad accusation that Burton and Hawkinburry conspired with others to withhold his papers will not suffice. *Vo*, 2021 WL 6197743 at *8. There is no evidence from which a reasonable jury could find personal involvement by Burton or Hawkinburry in the alleged retaliation and no evidence of specific acts or omissions by either of them.

There is no evidence from which a reasonable jury could find that the April 9, 2019 excessive-force incident involving Bosegerno, Parker and Posika was connected to the alleged taking of papers by five unknown officers the same day or was otherwise connected to the Erret grievance. Whitney filed separate grievances about the two incidents (Grievance ## 797180 and 795877). There is no evidence from which a reasonable jury could find that Bosegerno, Parker and Posika were aware of Whitney's grievance about Erret or that their actions were causally related to Whitney's protected activity.

Whitney's most direct causal connection is that Posika exposed him to OC spray in August 2019 in retaliation for filing a grievance about the April 9, 2019 excessive force incident. The court concludes, however, that a 4-month gap in time -- unaccompanied by any allegations to support a pattern of antagonism by Posika toward Whitney in the interim -- is too attenuated. In *Griffin v. Piedmont Airlines,* No. 17-CV-5378, 2020 WL 309594, at *6 (E.D. Pa. Jan. 17, 2020), the court held that a plaintiff failed to establish causation based on a similar time gap. *Id.* at *6. *See Bailey v. Commerce Nat. Ins. Servs., Inc.*, 267 F. App'x 167, 170 (3d Cir. 2008) ("[Plaintiff] fails to establish causation on the basis of temporal proximity.... [because] the elapsed period of four months between her protected activity and termination is not unusually

15

suggestive of retaliatory motive."); *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (passage of 3 and 4 months between the protected activity and adverse action was insufficient, standing alone, to establish a causal link); *Brown*, 2022 WL 2759064 at *9 n. 105 (at summary judgment stage, temporal proximity is usually measured in days, not weeks or months) (citing *Conard v. Pa. State Police*, 902 F.3d 178, 184 (3d Cir. 2018)).  Similarly, there is no evidence from which a reasonable jury could find that Robberts' conduct in September 2019, involving the mailing of Whitney's property, was causally connected to Whitney's protected activity many months earlier.

In sum, there is insufficient evidence in the record to support a First Amendment retaliation claim against any named defendant.  The Corrections Defendants' objections to this aspect of R&R #82 will be upheld.  Summary judgment will be GRANTED in favor of all defendants on the First Amendment retaliation claim.

3. Eighth Amendment – April 9, 2019 Incident

The Corrections Defendants argue that "a reasonable jury could conclude that Plaintiff was not subjected to excessive force or sexually harassed/assaulted."  (ECF No. 85 at 4-5).  That standard, however, is wrong in this context.  The court agrees that a reasonable jury could find in favor of the Corrections Defendants, but that is not enough to succeed at summary judgment -- the Corrections Defendants must demonstrate that even viewing the record in the light most favorable to Whitney, **no** reasonable jury could find in Whitney's favor.

As the magistrate judge aptly pointed out, the parties' accounts are drastically different and require credibility determinations.  (ECF No. 82 at 16).  A reasonable jury could believe Whitney

and conclude that the actions of Bosegerno, Parker and Posika during the April 9, 2019 incident were excessive and unjustified. The court agrees with and adopts this aspect of R&R #82.

With respect to Burton, Whitney alleges that Burton watched the entire April 9, 2019 incident through the window of the lieutenant's office and deliberately decided not to intervene. That testimony, if believed, would support a deliberate indifference claim against Burton. *See Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) ("a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so."). The court is aware that the initial grievance and investigation documents do not mention Burton. That evidence, however, merely creates a fact dispute about Burton's involvement which – at this stage – must be resolved in favor of Whitney.[8] The court agrees with and adopts this aspect of R&R #82.

The record does not support claims against the remaining Corrections Defendants (Hawkinburry, Kneeper, Robberts or Erret) arising from the April 9, 2019 incident.[9] There is no evidence from which a reasonable jury could find that any of those remaining defendants were involved at all. Summary judgment will be GRANTED on this claim with respect to Hawkinburry, Kneeper, Robberts and Erret and will be DENIED on this claim with respect to Parker, Posika, Bosegerno and Burton.

    4.  OC Spray

Whitney alleges that on three occasions in August 2019, Posika directed that the vents be opened to deliberately expose Whitney to OC spray used on a different inmate. Whitney also

---

[8] For the same reasons, Whitney's initial allegations that an unnamed corrections officer, rather than Parker, grabbed his buttocks create a fact dispute and do not entitle Parker to summary judgment.
[9] R&R #82 did not expressly address these defendants.

17

alleges that Posika used so much OC spray that rivulets were running out of the cell. Amended Complaint ¶¶ 64-67.

This claim will be analyzed under the excessive force rubric. "The use of chemical agents to subdue recalcitrant prisoners is not cruel and unusual when reasonably necessary." *Gibson v. Flemming*, 837 F. App'x 860, 862 (3d Cir. 2020). On the other hand, "it is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *See Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984). In *Roberts v. Luther*, No. 1:21-CV-00958, 2021 WL 5233318, at *5 (M.D. Pa. Nov. 10, 2021), the court declined to dismiss a similar allegation that excessive amounts of OC spray were used against another inmate. A reasonable jury, if it believed Whitney's testimony, could find an Eighth Amendment violation by Posika arising from the unnecessary exposure of Whitney to OC spray. There is no evidence from which a reasonable jury could find that any of the other named defendants were involved in these incidents.

Summary judgment will be DENIED on this claim with respect to Posika and GRANTED with respect to all other Corrections Defendants. The court adopts this aspect of R&R #82.

5. Eighth Amendment – denial of medical care

Whitney alleges that unnamed corrections officers took his eyeglasses and false tooth in April 2019 and prison staff ignored his requests for vision and dental treatment. The only named defendants identified in connection with the alleged withholding of medical treatment are Burton and Hawkinburry. There is no evidence in the record from which a reasonable jury could find either of them liable. In Grievance #797180, Whitney did not assert that Hawkinburry and Burton personally ordered or participated in the conduct (or were even aware of it). Instead,

Whitney conclusorily alleged only that Hawkinburry and Burton "authorize[d] the CO 1 officers to steal and destroy my medical eyeglasses." Defendants Exh. F. There are no supporting allegations about what Hawkinburry or Burton did. Whitney failed to produce evidence for a reasonable jury to find supervisory liability. None of the other Corrections Defendants are referenced at all.

All Corrections Defendants are entitled to summary judgment on this claim. The court does not adopt this aspect of R&R #82.

### 6. Mailing property to SCI-Forest

The R&R did not address Robberts' liability. In essence, Whitney alleges that Robberts stole money in September 2019 by forcing him to pay to have his property transferred to SCI-Forest. As explained previously, § 1983 does not provide a remedy to a state prisoner for an unauthorized deprivation of property, either intentional or negligent, if a meaningful state post-deprivation remedy for the loss is available. *Hudson*, 468 U.S. at 533. Robberts cannot be liable for First Amendment retaliation because there is no evidence from which a reasonable jury could find that Robberts' conduct was causally connected to any protected activity by Whitney. The mailing dispute occurred some 5 months after the alleged protected activity and there is no allegation that Robberts engaged in a pattern of antagonism in the interim. *See, e.g., Breeden*, 532 U.S. at 273–74; *Conard*, 902 F.3d at 184; *Brown*, 2022 WL 2759064 at *9 (temporal proximity usually measured in days, not weeks or months). There is no evidence that any other named defendant participated in any way in this conduct. In sum, all Corrections Defendants are entitled to summary judgment on this claim.

C. <u>Conclusion</u>

For the reasons set forth above, the motion for summary judgment (ECF No. 66) will be denied in part with respect to: (1) the Eighth Amendment excessive force claims against Parker, Posika, Bosegerno and Burton arising from the April 9, 2019 incident; and (2) the Eighth Amendment excessive force claim against Posika arising from the use of OC spray in August 2019.

The Corrections Defendants are entitled to summary judgment on all other claims. Hawkinburry, Kneeper, Robberts, Erret and the John Doe defendants will be dismissed from the case. The R&R will be adopted in part as the opinion of the court and rejected in part as supplemented and modified herein.

The court notes that Whitney requested appointment of counsel to assist him at trial. The court will request pro bono representation for Whitney. A pretrial scheduling conference will be held on the remaining claims by videoconference on October 11, 2022 at 11:00 a.m. Defense counsel shall make arrangements to enable Whitney to participate.

An appropriate order follows.

Dated: September 8, 2022

BY THE COURT,

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge